UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRIGHAM AND WOMEN'S HOSPITAL,<br>75 Francis Street<br>Boston, MA 02115<br><br>      *Plaintiff*,<br><br>      v.<br><br>XAVIER BECERRA<br>Secretary of the United States Department of<br>Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201<br><br>      *Defendant*. | Case No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND SUMS DUE UNDER THE MEDICARE STATUTE**

This is an action for judicial review of the final decision of the Defendant Xavier Becerra, in his official capacity as the Secretary of the United States Department of Health and Human Services (the "Secretary" or "Defendant"), concerning his determination of the Medicare direct graduate medical education ("DGME") reimbursement due to Plaintiff Brigham and Women's Hospital ("Brigham") for the direct costs it incurred hosting and training resident physicians in graduate medical education programs in its fiscal year ending September 30, 2016. Brigham challenges and seeks an order setting aside the regulation that the Secretary has adopted for calculating DGME payments, 42 C.F.R. § 413.79(c)(2)(iii), because the regulation unlawfully reduces Brigham's DGME payments by decreasing the number of residents that Plaintiffs may claim during a fiscal year.

**INTRODUCTION**

1. Brigham operates approved medical training programs for physician interns, residents, and fellows (collectively, "residents"). Brigham receives Medicare DGME payments, which are calculated, in part, based on the full-time equivalent ("FTE") residents that train at each hospital. If a resident exceeds the number of years designated at the "initial residency period" ("IRP") in the program for that resident's specialty, the resident's time is weighted at 0.5 FTE, which means that the hospital may only count one-half of the resident's time in that fiscal year. In addition, the number of FTEs that a hospital may claim for payment in any given year is generally capped at the number of *unweighted* FTEs that it trained in its fiscal year.

2. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it calculates a hospital's DGME payments using a weighted FTE cap rather than an unweighted FTE cap. 42 U.S.C. § 1395ww(h)(4)(F). The effect of the unlawful regulation is to impose on Brigham a weighting factor on residents that are within their IRP. This results in a reduction of greater than 0.5 for many residents who are beyond the IRP, which prevents Brigham from claiming their full FTE caps authorized by statute. The calculations of the current, prior-year, and penultimate-year weighted DGME FTEs (all three of which are elements of a hospital's DGME calculation in a given year) and the FTE caps are contrary to the statutory directive at 42 U.S.C. § 1395ww(h), and, as a result, Brigham's DGME payments are unlawfully understated.

3. The Secretary's application of this regulation violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (2012) (the "APA"), because it is contrary to the Medicare statute, is arbitrary and capricious, is an abuse of discretion, and is otherwise contrary to law. Accordingly, Brigham asks this Court to reverse the Secretary's decisions and to order the

Secretary to recalculate Brigham's DGME payments as required by statute.

## JURISDICTION AND VENUE

4. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* (2012) (the "Medicare statute"), which establishes the Medicare program, and the APA.

5. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain expedited judicial review ("EJR") of any action involving "a question of law or regulations relevant to the matters in controversy" when the Secretary's Provider Reimbursement Review Board (the "Board") "determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." The Board granted EJR to Brigham by letter dated July 14, 2022. Exhibit A. Accordingly, this action is timely filed within the sixty-day limitations period established at 42 U.S.C. § 1395oo(f)(1).

6. Venue in this Court is proper under 42 U.S.C. § 1395oo(f)(1).

## PARTIES

7. Plaintiff Brigham & Women's Hospital is an academic medical center located in Boston, Massachusetts. Brigham participates in the Medicare program and has been assigned Medicare Provider Number 22-0110. Brigham operates graduate medical education programs and receives Medicare DGME payments. Brigham contests the Medicare reimbursement decision for its fiscal year ending 2016.

8. Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act. Defendant is sued in his official capacity.

## BACKGROUND

### I. The Medicare Program

9. Medicare is a public health insurance program that generally furnishes health benefits to participating individuals once they reach the age of 65. 42 U.S.C. § 1395c. The Medicare program is administered by the Secretary through the Centers for Medicare and Medicaid Services ("CMS"), which is a component of the Department of Health and Human Services. *Id.* § 1317. Hospitals and other institutional "providers of services" enter into written agreements with the Secretary to furnish services to Medicare beneficiaries. *Id.* § 1395cc.

10. Under the Medicare statute, an eligible Medicare beneficiary is entitled to have payment made by Medicare on his or her behalf for, among other things, inpatient and outpatient hospital services provided by a hospital participating in the Medicare program as a provider of health care services. 42 U.S.C. §§ 1395c, 1395d(a), 1395k(a). The Medicare program consists of four parts: A, B, C, and D. This case only concerns inpatient hospital services that are paid under Part A of the Medicare statute. *Id.* § 1395d(a).

### II. Direct Graduate Medical Education

11. The Medicare program is required by statute to reimburse hospitals for direct graduate medical education costs that are attributable to the treatment of Medicare beneficiaries. 42 U.S.C. § 1395ww(h).

12. The Medicare statute prescribes a formula for computing annual DGME payment to hospitals, which multiplies a hospital's "patient load" by its "aggregate approved amount." 42 U.S.C. §§ 1395ww(h)(3)(A)-(C). The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A." 42 U.S.C. § 1395ww(h)(3)(C). The

4

"aggregate approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents. *Id*. § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a). The weighted average number of FTEs is calculated using the average of "the average of the actual full-time equivalent resident counts for the cost reporting periods and the preceding two cost reporting periods." 42 U.S.C. § 1395ww(h)(4)(G). The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-year FTE average) x (Medicare Patient Load) = DGME Payment**

13. For determining a hospital's FTE count, residents who are beyond their IRP are weighted at 0.5, so that only half their time is counted. 42 U.S.C. § 1395ww(h)(4)(C). The IRP is defined as the period necessary for board eligibility in the resident's training program, not to exceed five years. *Id*. § 1395ww(h)(5)(F). Most residents who are beyond the IRP are participating in post-residency fellowship programs.

14. For cost reporting periods beginning on or after October 1, 1997, Congress established a cap of unweighted DGME FTEs that a hospital may count, which is set at each hospital's number of unweighted FTEs during its most recent fiscal year that ended on or before December 31, 1996. 42 U.S.C. § 1395ww(h)(4)(F). A hospital's three-year FTE average in the DGME formula is therefore limited by the number of unweighted FTEs that the hospital trained in its 1996 reporting period. The FTE cap is determined "before the application of weighting factors" based on the IRP. *Id*. § 1395ww(h)(4)(F)(i).

15. In 1997, the Secretary promulgated a regulation to implement the 1996 cap that calculates a weighted FTE cap to be used in the payment calculation, which provided:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g) [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents

5

> for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.86(g)(4) (1997).

16. In 2001, the Secretary amended the regulation to determine separate weighted FTE caps for primary care residents and non-primary care, effective for cost reporting periods beginning on or after October 1, 2001. 42 C.F.R. § 413.86(g)(4)(iii) (2001); Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Rates and Costs of Graduate Medical Education: Fiscal Year 2002 Rates, 66 Fed. Reg. 39,828, 39,893-96 (Aug. 1, 2001) (the "FY 2002 IPPS Rule"). The Secretary did not change the formula for determining the weighted FTE cap. Rather, the Secretary used the same methodology as in the 1997 rule to calculate a primary care weighted FTE cap and a non-primary care weighted FTE cap, which are then added together. 42 C.F.R. § 413.86(g)(4)(iii); FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

17. In 2004, CMS redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii). Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates, 46 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11, 2004).

18. The regulation in effect during all fiscal years at issue in this action states as follows:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 2001 exceeds the limit described in this section, the hospital's weighted FTE count (before application of the limit) for primary care and obstetrics and gynecology residents and nonprimary care residents, respectively, will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.79(c)(2)(iii) (2016). This regulation remains in effect until October 1, 2022.

19. The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) calculates the ratio of a

hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count. 42 C.F.R. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996"). This ratio represents the percentage by which the hospital's 1996 cap is above or below the current-year unweighted FTE count. The ratio is then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) to reduce the weighted count. *Id.* The resulting number is the weighted FTE cap. The Secretary's methodology is expressed in the following equation:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary describes the result of this formula as "the hospital's reduced cap." FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

20. The result of the regulation is that a hospital that is subject to the FTE cap will *lose* reimbursement for each additional fellow that it trains.

21. For example, a hospital ("Hospital A") that trains fellows will have a lower weighted FTE cap than an otherwise identical hospital ("Hospital B") with the same 1996 FTE cap that trains the same number of residents within the IRP, yet trains no fellows beyond their IRPs.

|  | Hospital A | Hospital B |
|---|---|---|
| 1996 FTE Cap | 300 | 300 |
| Current Year Unweighted resident FTEs (within IRPs) | 350 | 350 |
| Current Year Unweighted fellow FTEs (beyond IRPs) | 100 | 0 |
| Current Year Total unweighted FTEs | 450 | 350 |
| Current Year Total weighted FTEs before application of weighted cap | 400 | 350 |
| Current Year Total weighted FTEs after application of weighted cap | 266.67 | 300 |

22. The application of the Secretary's formula at 42 C.F.R. § 413.79(c)(2)(iii) results in weighted FTE caps of 266.67 for Hospital A and 300 for Hospital B:

7

(1996 FTE Cap) / (Unweighted FTEs) x (Weighted FTEs) = Weighted FTE Cap

**Hospital A**: (     300     ) / (     450     ) x (     400     ) =  266.67

**Hospital B**: (     300     ) / (     350     ) x (     350     ) =  300

23. The Secretary's regulation at 42 C.F.R. 413.79(c)(2)(iii) results in very different payments for Hospital A and Hospital B, even though both hospitals trained the same number of residents within the IRP and Hospital A trained additional fellows beyond their IRP.

24. Because Hospital B does not train fellows beyond their IRPs, it receives a DGME payment based on its full 1996 FTE cap of 300 FTEs, even though its weighted FTEs are lower than Hospital A's weighted FTEs. Hospital B would be paid for 33.33 FTEs *more* than Hospital A, even though their FTE caps are identical and Hospital B trained 50 fewer weighted FTEs. In short, a hospital receives less reimbursement for each additional fellow that it trains.

### III. Medicare Cost Report Appeals

25. At the close of a hospital's fiscal year, it is required to submit to its designated Medicare Administrative Contractor ("MAC") a "cost report" showing both the costs incurred by the hospital during the fiscal year and the appropriate share of these costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f). MACs are private companies under contract with the Secretary to pay Medicare claims and audit hospital cost reports, among other duties. 42 U.S.C. § 1395kk-1.

26. The MAC must analyze and audit the cost report and inform the hospital of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803(a). A hospital's DGME payment is among the components of the final payment determination reported in the NPR.

27. A hospital may appeal a final determination of its Medicare reimbursement to the

8

Board. 42 U.S.C. § 1395oo(a). The Board has jurisdiction over appeals from MAC determinations if the following requirements are met: (1) the hospital is dissatisfied with the final determination; (2) the amount in controversy is at least $10,000; and (3) the hospital requests a hearing within 180 days of receiving the final determination. *Id.*

28. The Board lacks the authority to decide the validity of a Medicare regulation. 42 C.F.R. § 405.1867. If a hospital appeals an issue that involves a question that is beyond the Board's authority, the Board may authorize EJR of the case. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842.

29. The Board must grant EJR if it determines: (1) the Board does not have the authority to decide the legal question because the question is a challenge either to the constitutionality of a statute or to the substantive or procedural validity of a regulation or CMS Ruling; and (2) the Board has jurisdiction to hold a hearing on the specific matter at issue. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(f)(1).

30. If the Board issues an EJR decision, the CMS Administrator has the right to "review the Board's jurisdictional finding, but not the Board's authority determination." 42 C.F.R. § 405.1842(a)(3). The Board's decision to grant EJR "becomes final and binding on the parties unless the decision is reversed, affirmed, modified, or remanded by the Administrator." Id. § 405.1842(g)(1)(iii). A final Board decision constitutes the final agency action of the Secretary. 42 C.F.R. § 405.1877(a)(2).

31. If the Board grants a hospital's request for EJR, the hospital may seek judicial review of the action involving a question of law or regulations by commencing a civil action within sixty days of the date on which notification of the Board's EJR determination is received. 42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842(g)(2).

**FACTS SPECIFIC TO THIS CASE**

32. Brigham is a teaching hospital that receives Medicare DGME payments. Brigham trained residents in its fiscal year 1996 cost reporting period. The DGME FTE caps for Brigham was therefore based on its fiscal year 1996 resident FTE count.

33. During fiscal year 2016, which is the cost reporting year at issue in this case, Brigham's FTE count exceeded its 1996 FTE caps. Brigham's fiscal year 2016 FTE counts included residents who were both within and beyond the IRP. The Secretary employed the methodology of the regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors to Brigham's DGME FTE caps.

34. Brigham timely filed its appeal with the Secretary's Board following the receipt of its final determination from its MAC, pursuant to 42 U.S.C. § 1395oo.

35. The Board assigned case number 22-0873 to Brigham's appeal.

36. By letter dated July 14, 2022, the Board granted Brigham's request for EJR. The Board concluded that it had jurisdiction over the matter for the subject year and lacked the authority to decide the legal question concerning whether 42 C.F.R. § 413.79(c)(2)(iii) is valid. A copy of the Board's EJR decision is attached hereto as Exhibit A.

37. The Board's EJR decision constitutes the Secretary's final agency action in Board case number 22-0873.

38. By filing this Complaint, Brigham has timely sought EJR under 42 U.S.C. § 1395oo(f)(1).

**COUNT I**
**Violations of the Medicare Statute—DGME Payments**

39. Brigham realleges and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . not in accordance with law [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

41. The Secretary's regulation implementing the FTE cap and weighting factors is contrary to the Medicare statute because it determines the cap after applying the weighting factors. 42 U.S.C. § 1395ww(h)(4)(F)(i). The effect of the Secretary's unlawful regulation is to impose on Brigham weighting factors that result in reductions greater than 0.5 for many residents who are beyond the IRP, and the regulation prevents Brigham from claiming and receiving reimbursement for its full unweighted FTE cap. 42 C.F.R. § 413.79(c)(2)(iii). The Secretary's calculations of Brigham's current-year, prior-year, and penultimate-year weighted DGME FTEs and the FTE caps are therefore contrary to the statutory provision at 42 U.S.C. § 1395ww(h), and Brigham's DGME payments are unlawfully understated as a result.

42. The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is contrary to the Medicare statute because it creates a weighted FTE cap despite the statute's clear directive that requires the cap to be calculated "before the application of weighting factors." 42 U.S.C. § 1395ww(h)(4)(F)(i). The Secretary's regulation imposes a weighted FTE cap that is the absolute limit on the number of FTEs that may be eligible for reimbursement, and which is less than the statutory unweighted cap that Congress directed (*i.e.*, before the application of the weighting factors). When Brigham exceeds the cap and trains fellows, the weighted FTE count no longer reflects the weights assigned to the physicians. The Secretary's regulation is therefore contrary to congressional directive to determine the cap before the application of those weighting factors, as this Court held in *Milton S. Hershey Medical Ctr. v. Becerra*, 19-CV-3411, 2021 WL 1966572

11

(D.D.C. May 17, 2021) *appeal dismissed*, 21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021).

43. The Secretary's regulation at 42 C.F.R. § 413.79(c)(2)(iii) is further contrary to the Medicare statute because the weighted FTE cap prevented Brigham, and any other hospital, from ever reaching its 1996 FTE cap simply because it trains post-residency fellows beyond their IRP. The more post-residency fellows that the Brigham trains, the further its FTE cap, and its Medicare reimbursement, is reduced under the regulation.

44. Brigham's unweighted cap for fiscal year 2016 was 472.14. In that fiscal year, Brigham had a total of 490.29 unweighted FTEs, 409.80 that were within their IRP (and therefore were weighted at 1.0) and 80.49 that were beyond their IRP (and therefore were weighted at 0.5 FTE). The Secretary's regulation limited the number of FTEs that Brigham could claim for DGME reimbursement to only 442.14 FTEs rather than the unweighted statutory cap of 472.14, and penalized Brigham for training post-residency fellows beyond their IRP.

45. Brigham has suffered a downward payment adjustment that is greater than may be imposed by the statutory 0.5 weighting factors for training residents beyond the IRP.

46. By establishing the cap based on the hospital's unweighted FTE count for 1996, Congress has entitled Brigham to claim FTEs up to that cap. The Secretary's regulation renders this impossible, however, because Brigham trained residents who are beyond the IRP. The regulation at 42. C.F.R. 413.19(c)(2)(iii) is contrary to the Medicare statute at 42 C.F.R. § 1395ww(h) and is, therefore, invalid.

## COUNT II
## Arbitrary and Capricious Agency Action—DGME Payments

47. Brigham realleges and incorporates by reference paragraphs 1 through 46 as though fully set forth herein.

48. The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary [and] capricious [or] and abuse of discretion." 5 U.S.C. § 706(2).

49. The regulation at 42 C.F.R. § 413.79(c)(2)(iii) is arbitrary and capricious and an abuse of discretion and is invalid. 5 U.S.C. § 706(2).

50. In establishing a cap on FTEs, Congress intended for hospitals to be paid based on that cap; however, the Secretary's regulation prevents Brigham and other hospitals from reaching their FTE caps and improperly treats similarly situated hospitals differently because hospitals with identical 1996 FTE caps that have unweighted FTE counts equal to their caps will receive significantly disparate payments. In fact, the more post-residency fellows that Brigham and other hospitals train, the more reimbursement they lose under the regulation.

51. When promulgating the regulation at 42 C.F.R. §§ 413.79(c)(2)(ii)-(iii), the Secretary wholly failed to justify this differing treatment. *See Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3D 771. 776-77 (D.C. Cir. 2005). The Secretary failed to even acknowledge that its regulation would have such an inequitable effect. 63 Fed. Reg. at 26,330. Because the Secretary relied on factors that Congress has not intended him to consider and "entirely failed to consider an important aspect of the problem," the regulation is "arbitrary and capricious," as well as an abuse of discretion, and must be set aside under the APA. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## RELIEF REQUESTED

**WHEREFORE**, Brigham respectfully requests that this Honorable Court enter the following relief:

1. A declaration by the Court that the Secretary's regulation at 42 C.F.R. §

413.79(c)(2)(iii) is arbitrary, capricious, and abuse of discretion, and contrary to statutory law, and is therefore invalid;

2. A declaration by the Court that 42 U.S.C § 1395ww(h) forbids the Secretary from imposing a weighted FTE cap;

3. A declaration by the Court that the Secretary must apply FTE weighing factors after applying the unweighted FTE cap as required by 42 U.S.C. § 1395ww(h);

4. An Order requiring the Secretary to recalculate Brigham's DGME payments for the current, prior, and penultimate fiscal years, consistent with the Medicare statute so that Brigham's FTE counts are weighted for residents beyond the IRP at 0.5 and are capped based on the number of residents trained in the most recent cost reporting periods ending on or before December 31, 1996;

5. An Order requiring the Secretary to pay Brigham interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2); and

6. An Order awarding Brigham the costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

| | |
|---|---|
| Dated: September 9, 2022 | Respectfully submitted by<br>BRIGHAM & WOMEN'S HOSPITAL<br>By its Attorneys,<br><br>/s/ Rachel M. Wertheimer<br>Rachel M. Wertheimer<br>VERRILL DANA LLP<br>One Federal Street, 20th Floor<br>Boston, MA 02110<br>(617) 309-2600<br>rwertheimer@verrilldana.com |